UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES FOR A SEARCH WARRANT AUTHORIZING THE SEARCH OF ONE SAMSUNG CELLULAR TELEPHONE WITH A BLUE COVER SEIZED ON DECEMBER 15, 2021 | ) ) M.J. No. 22-6205-MPK ) ) ) ) |

AFFIDAVIT IN SUPPORT OF APPLICATION

I, Task Force Officer Robert R. LeFebre, being duly sworn, depose and state as follows:

1. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I am employed as a detective with the Lawrence Police Department, where I have worked since 1999. I currently am assigned as a Task Force Officer to Immigration and Customs Enforcement, Homeland Security Investigations ("HSI") and have been so assigned since November 2020. More specifically, I am assigned to the Organized Crime Drug Enforcement Task Force ("OCDETF"), which is a task force comprised of federal, state, and local law enforcement officers. I previously was assigned to the Drug Enforcement Administration ("DEA"), and in particular to Task Force 4 – Cross Borders Initiative, which is a task force incorporating federal, state, and local law enforcement officers, from 2010 to 2020. I am a graduate of the Lowell Police Academy. I currently am deputized as a Task Force Officer with HSI and DEA.

2. I am authorized to investigate violations of the laws of the United States, including violations of federal narcotics laws in Title 21 of the United States Code. I have received training regarding narcotics investigations while attending the police academy and have attended additional specialized training courses in furtherance of my past and current

assignments, including the Basic Narcotic Investigation course conducted and presented by the DEA training staff.

3. I have participated in all aspects of drug investigations, including physical surveillance, surveillance of undercover transactions, the introduction of undercover agents, the execution of search warrants, the effecting of arrests, debriefings of defendants, informants and witnesses who had personal knowledge regarding major narcotics trafficking organizations, and the court-authorized interception of communications. I have also reviewed taped conversations and telephone, financial, and drug records. Through my training and experience, I have become familiar with the manner in which illegal drugs are imported, transported, stored, and distributed, and the methods of payment for such drugs.

4. Based on my training and experience, I am also aware that drug traffickers commonly use cellular telephones to communicate about and further their drug trafficking activities, but are aware of law enforcement's use of electronic surveillance, and thus frequently change cellular telephone numbers and cellular telephones, use multiple cellular telephones simultaneously, and use prepaid cellular telephones (where the subscriber of the phone is not required to provide personal identifying information) in an effort to thwart law enforcement's use of electronic surveillance. I am also aware that drug traffickers often speak in vague, guarded, or coded language when discussing their illegal business in an effort to prevent detection, and often use text messages in lieu of phone calls to avoid speaking over the telephone.

## PURPOSE OF AFFIDAVIT

5. I submit this affidavit in support of an Application for a Search Warrant authorizing agents to search the following cellular telephone, which was seized on December 15, 2021, from Nestor Emilio OLAVERRIA FUSTER a/k/a Pablo PIZARRO ROSA (hereinafter, "PIZARRO ROSA") in Lawrence, Massachusetts: a Samsung cellular telephone with a blue cover, as described in Attachment A hereto (hereinafter, the "Subject Telephone").

6. The Subject Telephone currently is in the custody of HSI at 15 Sudbury Street, Boston, Massachusetts 02114. From my training and experience and the training and experience of law enforcement personnel who routinely handle this equipment, I understand that the Subject Telephone has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Subject Telephone first came into investigators' possession.

7. As set forth below, there is probable cause to believe that the Subject Telephone contains evidence, fruits, and instrumentalities of violations of federal law, including distribution of controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), and conspiracy to commit narcotics trafficking offenses, in violation of Title 21, United States Code, Section 846 (the "Target Offenses").

8. As part of my duties, I participated in an investigation that led to the arrest of PIZARRO ROSA and others on December 15, 2021. I am familiar with the facts and circumstances leading to PIZARRO ROSA's arrest and the seizure of the Subject Telephone. Since the Affidavit is being submitted for the limited purpose of securing the requested Search Warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish the requisite probable cause.

BACKGROUND OF THE INVESTIGATION[1]

9. In May 2020, other investigators and I began an investigation into a Lawrence, Massachusetts-based cocaine and fentanyl distribution organization. Between December 2020 and December 2021, investigators with the Boston OCDETF Strike Force conducted court-authorized interceptions of telephones used by some of the members of the target drug trafficking organization ("DTO"), including PIZARRO ROSA, and their associates. Interceptions showed that members of the DTO were distributing fentanyl and cocaine in and around Lawrence.

10. In particular, interceptions showed that PIZARRO ROSA obtained cocaine from co-defendant Elvis DEJESUS and others and distributed cocaine and fentanyl, including to co-defendant Othoniel LARA GONZALEZ a/k/a "CHIRIPA" (hereinafter, "CHIRIPA"). During the course of the investigation, agents seized cocaine and fentanyl distributed by or possessed by PIZARRO ROSA, among others.

11. As described below, on March 18, 2021, agents seized approximately 200 grams of cocaine that PIZARRO ROSA delivered to CHIRIPA outside of PIZARRO ROSA's residence at 32 Exchange Street, Lawrence, Massachusetts. On December 15, 2021, PIZARRO ROSA was arrested outside of his residence. Agents seized the Subject Telephone from him. Thereafter, agents obtained a search warrant for PIZARRO ROSA's apartment; when the warrant was executed, agents seized approximately 25 grams of fentanyl and 56 grams of cocaine from a hidden compartment inside the wall of PIZARRO ROSA's residence.

---

[1] The investigation is described in greater detail in my Affidavit submitted in support of a Criminal Complaint, which I hereby incorporate by reference. *See* M.J. No. 21-6733-MPK.

PIZARRO ROSA'S USE OF THE SUBJECT TELEHPONE TO DISTRIBUTE DRUGS AND SEIZURE OF THE SUBJECT TELEPHONE

<u>On March 18, 2021, Agents Seized 200 Grams of Cocaine Supplied by PIZARRO ROSA to CHIRIPA.</u>

12.    On March 18, 2021, agents intercepted calls that showed that PIZARRO ROSA was planning to receive 200 grams of cocaine from DEJESUS and redistribute them to CHIRIPA.  More specifically, at approximately 11:46 a.m. that morning, agents intercepted a call over telephone number (978) 601-8654 (hereinafter, "Target Telephone #1") during which PIZARRO ROSA spoke with CHIRIPA.  During the call, CHIRIPA said he had spoken with an associate from Boston.  CHIRIPA said, "He told me he has it at thirty-four.  I'm calling you to let you know I will leave it at the same and I want 200."  When PIZARRO ROSA asked for clarification, CHIRIPA said that his associate had "something at thirty-four," and that he was "calling to see if [PIZARRO ROSA] ha[d] it like that."  PIZARRO ROSA said, "No, they are giving it to me for thirty-four.  I can give it to you at thirty-five.  That's all."  CHIRIPA said he would call back.

13.    At 12:16 p.m. that afternoon, PIZARRO ROSA used Target Telephone #1 to call DEJESUS.  During the call, which was intercepted, PIZARRO ROSA said, "You told me with the, around exit three?"  DEJESUS said, "No, with exit three I told you I have something there that someone is offering me."  PIZARRO ROSA said, "[S]omeone called me with, with, but he is not willing to pay more than with the four."  DEJESUS asked, "For a whole one?"  PIZARRO ROSA said, "No, man, no, just two."  DEJESUS exclaimed, and PIZARRO ROSA clarified, "Two hundred bucks."  DEJESUS said he had a dentist appointment and then said, "I'll deal with you if you give me some time."  PIZARRO ROSA equivocated as to whether it was worthwhile to do the transaction for so little profit.  DEJESUS said, "[D]on't worry.  We'll work something

5

out, don't worry." Over the course of the afternoon and evening, PIZARRO ROSA and DEJESUS spoke several times, with DEJESUS ultimately telling PIZARRO ROSA that he would call when he was home. PIZARRO ROSA told DEJESUS, "Now it's two and a half."

14. At approximately 6:23 p.m., DEJESUS called PIZARRO ROSA at Target Telephone #1. The call was intercepted. DEJESUS said, "Listen, I'm eight minutes away, getting your stuff. I'm eight minutes away from the stuff, according to the GPS." PIZARRO ROSA said, "Okay," and DEJESUS said, "No, not from the stuff, from the house. Because I'm heading down." PIZARRO ROSA agreed. At 6:40 p.m., PIZARRO ROSA used Target Telephone #1 to tell DEJESUS to "[a]dd another hundred bucks to the appointment." DEJESUS agreed. At 7:02 p.m., DEJESUS was intercepted over Target Telephone #1 telling PIZARRO ROSA that he would arrive in five minutes.

15. Based on my training and experience, as well as my familiarity with this investigation, I believe that during this series of calls, CHIRIPA asked to purchase 200 grams ("I want 200") of cocaine for $34.00 per gram ("at thirty-four"). I believe that PIZARRO ROSA originally quoted a price of $35.00 per gram ("thirty-five"). I believe that PIZARRO ROSA then attempted to negotiate the price at which he could purchase the cocaine from DEJESUS down to $33.00 per gram ("exit three"). I believe that DEJESUS asked if the transaction was for a kilogram of cocaine ("a whole one"), and that PIZARRO ROSA told him it was for 200 grams ("Two hundred bucks"). I believe that PIZARRO ROSA and DEJESUS ultimately reached an agreement on price and that DEJESUS agreed to deliver the drugs. I believe that PIZARRO ROSA increased his order to 350 grams ("Now it's two and a half"; "[a]dd another hundred bucks to the appointment").

16. At approximately 7:14 p.m. that day, agents conducting surveillance observed DEJESUS arrive at 32 Exchange Street, Lawrence, Massachusetts and enter the residence. A few minutes later, DEJESUS exited 32 Exchange Street and left the area. Based on my training and experience, as well as my familiarity with this investigation, I believe that DEJESUS delivered 350 grams of cocaine to PIZARRO ROSA inside of 32 Exchange Street.

17. At approximately 7:19 p.m., PIZARRO ROSA used Target Telephone #1 to call CHIRIPA and ask him to "pass by" his location. CHIRIPA said, "I'll pass by there to check it out, eh?" PIZARRO ROSA said, "Yes, to check it out. No, it's really good." CHIRIPA agreed to call in ten minutes. At 7:26 p.m., CHIRIPA called PIZARRO ROSA and told him he was parking. PIZARRO ROSA said, "Come up," and agreed to open the door.

18. Thereafter, at approximately 7:28 p.m., agents observed a male enter 32 Exchange Street. Agents then observed a vehicle that agents previously had seen CHIRIPA driving parked in front of 30 Exchange Street. Approximately ten minutes later, a male exited 32 Exchange Street, entered the car known to be used by CHIRIPA, and drove a short distance. A marked Lawrence Police unit attempted to stop CHIRIPA at my direction. CHIRIPA did not immediately stop and instead continued to 435 Broadway, in Lawrence, where he resided. CHIRIPA pulled into the parking lot of 435 Broadway and quickly exited his car. The police officer approached CHIRIPA in the parking lot and requested his license. Additional officers arrived on scene. CHIRIPA stated that he did not have a license and lived at 435 Broadway. CHIRIPA stated that he had been running errands.

19. Officers towed CHIRIPA's car and subsequently located a clear plastic bag containing approximately 200 grams of a substance that field tested positive for cocaine under

the front passenger seat. Based on my training and experience, I believe that PIZARRO ROSA distributed the 200 grams of cocaine to CHIRIPA inside of his residence at 32 Exchange Street.

20.     That night, at approximately 8:15 p.m., CHIRIPA was intercepted telling PIZARRO ROSA that he had been stopped by police and that he had left "200" under the seat.

<u>On November 10, 2021, PIZARRO ROSA Used the Subject Telephone to Arrange to Deliver Drugs.[2]</u>

21.     On November 10, 2021, at approximately 5:48 a.m., PIZARRO ROSA texted an unidentified male using telephone number (978) 697-5922 ("UM5922") from Target Telephone #1, "[Y]ou eslipy." At 5:54 a.m., UM5922 texted back that he was at the clinic and would be at work in a few minutes. UM5922 asked PIZARRO ROSA to let him know if PIZARRO ROSA would arrive soon. PIZARRO ROSA texted back from Target Telephone #1, "630." UM5922 responded by text message, agreeing and asking PIZARRO ROSA to go to the parking lot.

22.     Based on pole camera surveillance, at approximately 6:10 a.m., the third floor hallway light inside of 32 Exchange Street illuminated. Seconds later, the second floor hallway light inside of 32 Exchange Street illuminated. Seconds later, the first floor hallway light inside of 32 Exchange Street illuminated. At approximately 6:11 a.m., PIZARRO ROSA exited 32 Exchange Street and walked to and entered his car. Agents did not see where PIZARRO ROSA went after his car left the area. At approximately 6:26 a.m., PIZARRO ROSA texted UM5922,

---

[2] Additional examples of PIZARRO ROSA's use of the Subject Telephone to arrange to deliver drugs are set forth in my affidavit in support of an application for a search warrant for PIZARRO ROSA's residence at 32 Exchange Street, 4th floor apartment, Lawrence, Massachusetts, which I hereby incorporate by reference. *See* M.J. No. 21-6772-MPK.

"[N]ow." There were no intercepted communications over Target Telephone #1 between when PIZARRO ROSA agreed to meet UM5922 and when he texted UM5922 to say he had arrived.

23.     At 2:11 p.m. that afternoon, UM5922 called PIZARRO ROSA at Target Telephone #1. During the call, UM5922 said, "Ay, this morning. What, what was that? You gave me one little tiny bag of, of the other thing." PIZARRO ROSA asked for clarification, and UM5922 said, "So you gave me two coffee, one sugar, and then a real tiny, tiny sugar."

24.     Based on my training and experience, as well as my familiarity with this investigation, I believe that PIZARRO ROSA delivered drugs to UM5922, and specifically that he delivered two bags of heroin and/or fentanyl ("coffee"), one bag of cocaine ("sugar"), and one very small bag of cocaine ("sugar").

<u>On December 15, 2021, Agents Seized the Subject Telephone from PIZARRO ROSA and Confirmed that It Was Target Telephone #1.</u>

25.     On December 13, 2021, PIZARRO ROSA and others were charged by criminal complaint with conspiracy to distribute fentanyl, cocaine, and other controlled substances, in violation of Title 21, United States Code, Section 846. An arrest warrant for PIZARRO ROSA issued that day. On December 15, 2021, PIZARRO ROSA was arrested near his residence (32 Exchange Street, Lawrence). Agents seized the Subject Telephone and a small plastic baggie containing approximately half a gram of a substance that tested positive at the DEA laboratory for fentanyl from PIZARRO ROSA at the time of his arrest. PIZARRO ROSA stated that the fentanyl was for personal use. A law enforcement officer called the telephone number for Target Telephone #1. The Subject Telephone rang and displayed the telephone number that the law enforcement officer was calling from. As such, I believe that the Subject Telephone is Target Telephone #1.

26. On December 15, 2021, agents obtained a search warrant for PIZARRO ROSA's residence, 32 Exchange Street, fourth floor apartment, Lawrence, Massachusetts. The search warrant was executed that day. Agents located a hidden compartment in the closet wall of a bedroom in the apartment. Inside of the wall hide, agents located the following DEA-laboratory-confirmed substances: approximately 21 grams of cocaine base, approximately 35 grams of cocaine, approximately 25 grams of fentanyl, and approximately 160 grams of cutting agent commonly used to dilute drugs for distribution. Agents also seized $17,609 from the wall hide. Agents seized identification documents in PIZARRO ROSA's name and bearing his likeness from the bedroom where the wall hide was located. Agents also located drug processing and distribution paraphernalia in the same bedroom.

27. On February 3, 2022, a grand jury returned an Indictment charging 21 defendants with drug, firearms, and immigration offenses. PIZARRO ROSA was charged with one count of conspiracy to distribute 40 grams or more of fentanyl, 5 kilograms or more of cocaine, and other controlled substances, in violation of Title 21 United States Code, Section 846, one count of distribution of cocaine, in violation of Title 21, United States Code, Section 841(a)(1), and one count of possession with intent to distribute 40 grams or more of fentanyl and cocaine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(vi).

DRUG TRAFFICKERS' USE OF CELLULAR TELEPHONES

28. Based on my training and experience, I know that a cellular telephone is a handheld wireless device used primarily for voice communication through radio signals. Cellular telephones send signals through networks of transmitter/receivers called "cells," enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and

time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones now offer a broad range of capabilities. These capabilities include but are not limited to: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and email; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include GPS technology for determining the location of the device. Based on my training, experience, and research, I know that the Subject Telephone has some or all of the capabilities described above. In my training and experience, examining data stored on devices of this type can show, among other things, evidence that reveals or suggests who possessed or used the device, as well as his criminal accomplices.

29.     Based upon my training and experience, as well as the training and experience of other law enforcement agents I have worked with, I am aware that drug traffickers commonly possess and use multiple cellular telephones simultaneously to conduct their drug trafficking activities. It is common for these cellular telephones to be retained, although not necessarily used, for months or longer by drug traffickers in their vehicles, residences, and businesses. Drug traffickers often do not discard their cellular telephones immediately after they stop actively using them. Therefore, while it is common for drug traffickers to stop using cellular telephones frequently, it is far less common for drug traffickers to discard their cellular telephones after they switch to new cellular telephones. As a result, I am aware that collections of cell phones have been found during drug trafficking search warrants that have included cell phones that were no longer being used by a particular drug trafficker but had nevertheless been retained.

30. Evidence of drug crimes often is found in cell phones and smart phones used by drug traffickers. Such evidence can include internet searches for drug-related paraphernalia, addresses, or telephone numbers, as well as incriminating communications via emails, text messages or instant messages. From my training, experience, and information provided to me by other agents, I am aware that individuals commonly store records of the type described in Attachment B on their cellular telephones.

31. It should be noted that, with the advance of technology, the distinction between computers and cellular telephones is quickly becoming less clear. Actions such as internet searching or emailing, in addition to calling and text messaging, can now be performed from many cell phones. Moreover, the particular numbers of and the particular numbers dialed by particular cellular telephones can be evidence of drug trafficking. Such numbers can confirm relationships among and between co-conspirators, as well as the occurrence of certain events.

32. As with most electronic/digital technology items, communications made from an electronic device, such as a cell phone, are often saved or stored on the device. Storing this information can be intentional, for example, by saving an e-mail as a file or saving the location of one's favorite websites in "bookmarked" files. Digital information can also be retained unintentionally. Traces of the path of an electronic communication or of an internet search may be automatically stored in many places on a cell phone. In addition to electronic communications, a user's Internet activities generally leave traces in the web cache and Internet history files. A forensic examiner often can recover evidence that shows when and in what manner a user of an electronic device, such as a cell phone, used such a device.

33. Electronic files or remnants of such files can be recovered months or even years after they have been downloaded, deleted, or viewed via the Internet. Electronic files

downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they often can be recovered months or years later using readily available forensic tools. When a person "deletes" a file on an electronic storage device such as a computer, the data contained in the file often does not actually disappear; rather, that data often remains on the device until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -- that is, in space on a device that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space -- for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from an electronic storage device depends less on when the file was sent, downloaded, or viewed than on a particular user's operating system, storage capacity, and habits.

34. Based on all of the information I have obtained during the course of this investigation, and for the reasons more specifically set forth herein, I believe that until December 15, 2021, PIZARRO ROSA was engaged in drug trafficking. I further believe that evidence of his drug trafficking activity will be found on the Subject Telephone.

## CONCLUSION

35. Based on the foregoing, I believe there is probable cause to believe that the Subject Telephone presently contains the items set forth in Attachment B hereto, which is incorporated herein by reference, and that those items constitute evidence of the commission of

criminal offenses, specifically, violations of Title 21, United States Code, Sections 846 and 841. Accordingly, I respectfully request the Court issue a search warrant for the Subject Telephone.

    I declare that the foregoing is true and correct.

/s/ Robert R. LeFebre

_____

ROBERT R. LEFEBRE
Task Force Officer
Homeland Security Investigations

Subscribed and sworn to by telephone in accordance with Fed. R. Cr. P. 4.1 this 12th day of August, 2022.

*[signature: Page Kelley]*

HONORABLE M. PAGE KELLEY
United States Magistrate Judge
District of Massachusetts

**ATTACHMENT A**

Description of the Property To Be Searched

A Samsung cellular telephone with a blue case seized from Pablo PIZARRO ROSA outside of 28 Exchange Street, Lawrence, Massachusetts, on December 15, 2021 (HSI Exhibit 13), currently in the custody of Homeland Security Investigations, 15 Sudbury Street, Boston, Massachusetts 02114.

# ATTACHMENT B

### Items to be Seized from the Subject Telephone

All records and data from January 1, 2020, to December 15, 2021, in any format whatsoever (digital, electronic, or otherwise) that constitute evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 846 and 841 (drug conspiracy and drug distribution), including, without limitation:

a. Names and contact information that have been programmed into the device (including but not limited to contacts lists) of individuals engaged in drug trafficking;

b. Logs of calls (including last numbers dialed, last calls received, time of calls, missed calls, and duration of calls) both to and from the device;

c. Text messages both sent to and received from the device (including any in draft form) relating to or referencing drug trafficking and/or referencing individuals engaged in drug trafficking;

d. Incoming and outgoing voice mail messages both to and from the device relating to or referencing drug trafficking or individuals engaged in drug trafficking;

e. GPS data;

f. Browser messages and/or internet communications (e.g., e-mail, text messages) both to and from the device (including any in draft form) relating to or referencing drug trafficking or individuals engaged in drug trafficking;

g. Documents, photographs, or videos in any format, including but not limited to Microsoft Word or Adobe PDF files, relating to or referencing drug trafficking or individuals engaged in drug trafficking;

h. All data within the device evidencing ownership, possession, custody, control, or use of the device; and

i. Service Provider handset unlock password(s) and any other passwords used to access the electronic data described above.